```
                UNITED STATES BANKRUPTCY COURT
                 FOR THE DISTRICT OF NEW MEXICO
```

In re:
Eli Tarin and Lilia Tarin,
        Debtors.                              No. 7-08-12316-SL

Philip J. Montoya, Trustee,
        Plaintiff,

v.                                                  Adv. No. 10-1004-S

Amanda Campos,
        Defendant.

## **MEMORANDUM OPINION**

     This matter came before the Court for a final pretrial conference. The parties agreed that many of the facts were not in dispute and that the outcome of this adversary proceeding might be decided on a legal basis. The Court scheduled briefs, which have now been completed. This is a core proceeding. 28 U.S.C. § 157(b)(2)(H). The Court finds that the adversary proceeding should be dismissed with prejudice.

## **FACTS**

1. Debtors Eli Tarin and Lilia Tarin filed a joint Chapter 7 proceeding in this district on July 17, 2008.

2. Defendant is Debtors' daughter.

3. On or about January 8, 2008, Debtors wrote a check to Lydia Traina in the amount of $12,000.00 for wedding planning services for Defendant for her wedding scheduled for February 2, 2008.

4. Ms. Traina made the following disbursements:

| Item | Amount |
|---|---|
| Wedding planner fees | $1,450.00 |
| Decorations | $2,815.04 |
| Flowers | $2,782.43 |
| Photographer | $1,147.88 |
| Cake | $889.14 |
| Band | $600.00 |
| Limousine | $205.99 |
| Supplies | $128.47 |
| Projector for slide show | $85.00 |
| Piano player | $75.00 |
| Extra labor | $50.00 |
| Rehearsal dinner deposit | $25.00 |
| Subtotal | $10,253.95 |
| Refunded to Debtors | $1,746.05 |
| Total | $12,000.00 |

5. On January 10, 2010, Plaintiff filed this adversary proceeding against defendant seeking avoidance of the $12,000.00 transfer ("Transfer") to Defendant under 11 U.S.C. § 548.

6. Plaintiff argues that the Transfer was made with the intent to hinder, delay or defraud a creditor or future creditor, or, alternatively, that the Debtors were insolvent at the time of the Transfer or became so as a result thereof and that they received less than reasonably equivalent value for the Transfer.

7. The Court finds that the Debtors transferred $10,253.95 in return for $10,253.95 in goods and services.

Page -2-

**CONCLUSIONS OF LAW**

Section 548 allows a trustee to recover fraudulent transfers. It states:

**§ 548. Fraudulent transfers and obligations**.

>(a)(1) The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily--
>>(A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or
>>(B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
>>(ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
>>(II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;
>>(III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or
>>(IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.
>
>(2) ...
>(b) ...
>(c) Except to the extent that a transfer or obligation voidable under this section is voidable under section 544, 545, or 547 of this title, a transferee or obligee of such a transfer or obligation that takes for value and in good faith has a lien on or may retain any

Case 10-01004-s    Doc 20    Filed 04/04/11    Entered 04/04/11 14:46:50 Page 3 of 11

> interest transferred or may enforce any obligation
> incurred, as the case may be, to the extent that such
> transferee or obligee gave value to the debtor in
> exchange for such transfer or obligation.
> (d)(1) ...
> (2)  In this section-
> > (A) "value" means property, or satisfaction or
> > securing of a present or antecedent debt of the
> > debtor, but does not include an unperformed
> > promise to furnish support to the debtor or to a
> > relative of the debtor[.]

It is inconceivable that the wedding planner, cake maker, florist, band, piano player, limo driver or photographer would not be transferees in good faith for value.  They would all have defenses to § 548(a)(1)(A) under § 548(c).  See Clark v. Security Pacific Business Credit, Inc. (In re Wes Dor, Inc.), 996 F.2d 237, 242 (10th Cir. 1993).  In that case, Espedel was the president of Wes Dor, Inc. and its subsidiaries, and had personally guaranteed Security Pacific's debt.  Id. at 238.  The subsidiaries gave Security Pacific financing statements but no security agreements in support of the financing statements.  Id. at 239.  When Security Pacific realized its position, it informed Espedel that if he wanted additional financing he would have to sign an addendum pledging the subsidiaries' assets as collateral. Id.  Wes Dor, Inc. subsequently entered bankruptcy and the trustee challenged Security Pacific's secured status.  Id. at 240.  The bankruptcy court concluded that Espedel made the transfer to Security Pacific with the actual intent to hinder or delay or defraud the creditors of Wes Dor.  Id.  Security Pacific

Page -4-

claimed a defense under § 548(c) arguing that it gave value for the transfer. Id. The trial court limited the defense to the amount Security Pacific had actually given. Id. "Because the parties do not dispute the bankruptcy court's finding that Mr. Espedal and Debtor executed the Addendum with an actual intent to defraud its unsecured trade creditors, the only issue before us is the extent to which the Bank gave 'value' for the transfer and, hence, may retain proceeds under § 548(c)." Therefore, a creditor that has given value for a transfer has a defense in the amount given. And, lack of value is an element of proof to avoid a constructively fraudulent transfer under § 548(a)(1)(B)(i). Plaintiff cannot prevail under either section.

The cases cited by the Plaintiff are all distinguishable. In In re 375 Park Avenue Assoc., Inc., 182 B.R. 690, 692 (Bankr. S.D. N.Y. 1995)[1], the issue was the avoidance of a $3 million pledge to the U.S. Holocaust Memorial Museum, for which the Debtor would receive nothing tangible. In Henkel v. Green (In re Green), 268 B.R. 628, 651 (Bankr. M.D. Fla. 2001), the issue was the avoidance of a $50,000.00 outright cash gift to the Debtor's daughter, for which the Debtor received nothing tangible.[2] In

---

[1] 375 Park Avenue Assoc., Inc. was an action brought pursuant to §544 and New York fraudulent transfer law, but the principles cited by the court in that case are equally applicable.

[2] Had Debtors delivered the funds directly to their daughter (continued...)

Geltzer v. Crossroads Tabernacle (In re Rivera), 214 B.R. 101, 106 (Bankr. S. D. N.Y. 1997), the issue was avoidance of tithes given to Debtors' church, for which the Debtor would receive nothing tangible.

> In determining whether fair and reasonable consideration has been given, the court will focus on whether the debtor received an "economic benefit", either directly or indirectly.

375 Park Avenue Assoc., Inc., 182 B.R. at 695-96 (citation and internal punctuation omitted). In the case before the Court, Debtors did receive tangible goods and services equal in value to what they paid.

Plaintiff cites Hanrahan v. Walterman (In re Walterman Implement, Inc., 2007 WL 2901151 (Bankr. N.D. Iowa 2007) for the proposition that "consideration does not qualify as reasonable equivalent value if it does not provide a financial benefit to the debtor and thus to the creditors." (quoting In re Marlar, 252 B.R. 743, 760 (8th Cir. BAP 2000), aff'd, 267 F.3d 749 (8th Cir. 2001). The facts of that case were that Debtor transferred $13,300 to his daughter and $8,464.52 to the University of

---

$^{2}$(...continued)
instead of paying for the goods and services themselves, the Court might reach a different result, and therefore this memorandum opinion does not address that possible set of facts. Nor does the Court decide the issue (or even the relevance of the issue) of whether cultural values of the Tarin family and their immediate community compelled and justified the payment by the bride's family of the majority of the wedding expenses.

Page -6-

Northern Iowa on his daughter's behalf.  Id. at *1.  Debtor defended the transfers on the grounds that it earned him his daughter's love and affection and she in return gave her best academic effort.  Id. at *3.  It has of course long been the case that love and affection in return for the expenditure do not constitute "value" under the statute.  Id. (citing Marlar, 267 F.3d at 756);  Tavenner v. Smoot (In re Smoot), 257 F.3d 401, 408-09 (4th Cir. 2001)("[C]ourts have consistently held that a transfer motivated by love and affection does not constitute reasonably equivalent value for the purposes of 11 U.S.C. § 548.")  Compare Hinde's Lessee v. Longworth, 24 U.S. 199, 213 (1826):

> A deed from a parent to a child, for the consideration of love and affection, is not absolutely void as against creditors.  It may be so under certain circumstances; but the mere fact of being in debt to a small amount, would not make the deed fraudulent, if it could be shown, that the grantor was in prosperous circumstances, and unembarrassed, and that the gift to the child was a reasonable provision according to his state and condition in life, and leaving enough for the payment of the debts of the grantor.  The want of a valuable consideration may be a badge of fraud, but it is only presumptive, and not conclusive evidence of it, and may be met and rebutted by evidence on the other side.

(Decided under non-bankruptcy law.)

Distinguishing between cases in which the debtor made the transfer in return for love and affection as opposed to something more tangible is clearly what is behind the language from the Hanrahan case quoted by Plaintiff.  But of course, taken

literally, the language overstates the requirement to prove "value": the debtor need only have received a tangible value for itself, not the creditors. Otherwise, one could imagine that a trustee might be entitled to recover, for example, the compensation paid to a masseuse by a debtor.

The fact that Defendant benefitted incidentally does not matter. The purpose of the fraudulent transfer section is to ensure that the estate is not depleted by transfers for no or inadequate value. Therefore, the Court analyzes an allegedly fraudulent transfer by examining "what the debtor surrendered and what the debtor received irrespective of what any third party may have gained or lost." See Meister v. Jamison (In re Jamison), 21 B.R. 380, 382 (Bankr. D. Ct. 1982). In Meister, in 1978 the debtor executed a promissory note to a credit union and used the loan proceeds to purchase a pick-up truck for his son. Id. at 381. The Debtor made all of the regularly scheduled payments until debtor filed a Chapter 7 bankruptcy in February 1981. Id. Debtor was discharged from his liability on the credit union note. Id. The lien on the truck was decreased by the amount of payments made by the father. Id. The parties stipulated that debtor was insolvent at all relevant times. Id. The trustee sought to avoid the payments as fraudulent transfers, arguing that the payments to the credit union increased the equity in the son's vehicle for which the debtor received no consideration.

Page -8-

Id. The bankruptcy court rejected the argument. Id. It found that there was no depletion of debtor's estate because each payment made was matched by an equivalent reduction in the debtor's debt.[3] Id at 382. It was true that the debtor's son received a benefit, but that was not at the expense of the estate. Id.

The facts of the instant case are stronger than the facts in Meister. Arguably Meister's son was receiving a truck with the only obligation being incurred by Meister himself, who apparently got no benefit from the transaction.[4] In the instant case, as Debtors correctly point out, they and their guests, and of course their daughter, got to smell the flowers, listen and dance to the music, eat the food, etc. If Plaintiff were entitled to recover from the daughter, would he also be entitled to recover from the guests? And what would be the difference between this set of facts and a situation in which Debtors hosted Thanksgiving dinner for all the extended family?[5]

---

[3] "Value" includes satisfaction of an antecedent debt of the debtor. Section 548(d)(2)(A).

[4] Nothing in the opinion says whether Meister ever got to use the truck.

[5] To be fair to Plaintiff, the Court is not at all suggesting that Plaintiff would have brought an action to recover for hosting Thanksgiving dinner. Clearly what caught Plaintiff's attention was the size of the expenditures taken together, and the fact that a primary beneficiary was Debtors' daughter. Had the expenditure been, say, $100,000 instead of $10,253.95, the
(continued...)

Page -9-

In this case the Debtors received value equal to what they surrendered. The fact that they put the value received into a wedding party for their daughter does not make it a fraudulent transfer.

Finally, allowing relief on this complaint would amount to a double recovery for the creditors. Debtors received the goods and services for which they paid. Now, Plaintiff is attempting a second recovery identical to what was already received. See Id. (Meister court noted that if trustee could recover the funds it would be a double recovery because the claims against the estate had already been reduced by the amount paid.)

The Court will enter an Order dismissing this adversary proceeding with prejudice.

*[signature]*

Honorable James S. Starzynski
United States Bankruptcy Judge

Date Entered on Docket: April 4, 2011

---

[5](...continued)
result might have been different since at some level of expenditure, benefit to the debtor becomes inconsequential compared to benefit to the transferee. The Tenth Circuit proverb, quoted in Albuquerque Nat'l Bank v. Zouhar (In re Zouhar), 10 B.R. 154, 157 (Bankr.D.N.M.1981), continues to be apt: "There is a principle of too much; phrased colloquially, when a pig becomes a hog it is slaughtered." Dolese v. United States of America, 605 F.2d 1146, 1154 (10th Cir. 1979). But that is not this case and the Court does not rule on that hypothetical set of facts.

Copies to:

Bonnie Bassan Gandarilla
Moore, Berkson & Gandarilla, P.C.
PO Box 7459
Albuquerque, NM 87194

Kieran F Ryan
Ryan Law Office
PO Box 26
Las Cruces, NM 88004-0026

Office of the United States Trustee
PO Box 608
Albuquerque, NM 87103-0608